## Reveam, Inc. v Taylor Frères Capital Mkts., LLC

2023 NY Slip Op 34555(U)

December 29, 2023

Supreme Court, New York County

Docket Number: Index No. 655074/2021

Judge: Joel M. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

---------------------------------------------------------------------------------X

REVEAM, INC.,

                                 Plaintiff,

- v -

TAYLOR FRERES CAPITAL MARKETS, LLC, ZACHARY
TAYLOR, H. MARTIN RICE,

                                 Defendants.

---------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 655074/2021 |
| **MOTION DATE** | 09/27/2023, 09/27/2023 |
| **MOTION SEQ. NO.** | 005 006 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 005) 92, 93, 94, 97, 101, 104, 105, 106, 107, 108, 109, 110, 112

were read on this motion to               DISMISS COUNTERCLAIMS         .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 95, 96, 102, 103, 111, 139, 140

were read on this motion to               DISMISS COUNTERCLAIMS         .

This case involves a contractual dispute between Reveam, Inc. ("Reveam") and its former financial advisor and investment banker, Taylor Frères Capital Markets, LLC ("Taylor Frères"), and its principal, Zachary Taylor ("Taylor").  Reveam disputes the authenticity, validity, and enforceability of certain of the parties' purported agreements, while Taylor Frères counterclaims that Reveam breached these various agreements by failing to compensate Taylor Frères in accordance with the terms of those agreements.

Plaintiff/Counterclaim-Defendant Reveam now moves to dismiss portions of Taylor Frères' Counterclaims pursuant to CPLR §§ 3211(a)(1), and (7) (Mot. Seq. 006).  Counterclaim-Defendant H. Martin Rice ("Rice") also moves to dismiss Count IV of Counterclaims pursuant to

655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL
Motion No.  005 006

Page 1 of 18

1 of 18

CPLR §§ 3211(a)(1), (7), and (8) (Mot. Seq. 005). For the following reasons, Rice's motion to dismiss is granted, and Reveam's motion to dismiss is granted in part.

## BACKGROUND

According to the Counterclaims, Taylor Frères provided financial advisory and merchant banking services to Reveam (f/k/a Scantech Sciences, Inc.) from 2009 to 2012, and again from 2013 to 2017 (NYSCEF 84 [Answer & Counterclaims ("Counterclaims")] ¶2). Taylor Frères applied its proprietary know-how and invested its own capital in Reveam, becoming a shareholder during the 2009-2012 engagement (id.). And while Taylor Frères received certain shares of Reveam and fees pursuant to a 2009 Agreement, Taylor Frères claims that it was not compensated the full amount of shares and fees to which it was entitled under that agreement (id. ¶11).

In 2013, Reveam again engaged Taylor Frères to act as its exclusive financial and strategic advisor. During this later period, Taylor Frères alleges that it assisted Reveam in raising tens of millions of dollars in capital investment, including numerous rounds of stock issuances in the tens of millions of shares, and provided other advisory services to Reveam (id.). Taylor Frères alleges that it expected, and bargained for the right, to receive substantial compensation in cash and Reveam equity in consideration for its services (id. at ¶4).

As relevant here, Reveam's engagement of Taylor Frères was set forth in a Letter Agreement dated November 26, 2013 (NYSCEF 3 [the "2013 Agreement"]), and a side letter agreement on October 17, 2014 (NYSCEF 4 [the "2014 Agreement"]) (Counterclaims ¶¶13, 25). In lieu of payment of certain advisory fees, and to make Taylor Frères whole for the cash and equity still owing and due to be issued to Taylor Frères under the 2009 Agreement, the 2013 Agreement contained a clause converting such previously vested fees and shares into a senior

**655074/2021 SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No. 005 006**

**Page 2 of 18**

2 of 18

[* 2]

equity interest in Reveam (*id.* ¶16; 2013 Agreement at 7). Pursuant to the terms of that clause, Taylor Frères alleges that it was entitled to a 5.00% share of the equity of Reveam as it stood on November 26, 2015, and on that date, the most senior class of equity was Series A-1 Preferred Stock (*id.* ¶18).

According to Taylor Frères, the 2014 Agreement changed and accelerated the accrual and due date for Reveam to pay certain performance fees and bonuses to Taylor Frères, including for new services not contemplated by the 2013 Agreement (*id.* ¶26). This agreement also extended the Term of the 2013 Agreement through December 31, 2015 (*id.*), which was set to renew automatically for 12 months (to December 31, 2016) unless timely notice of termination is given (*id.* ¶¶27–29).

There are four provisions of the 2013 Agreement, as amended, in dispute on this motion: the Two-Year Tail Right, Financial Advisor Right of First Refusal ("Financial Advisor ROFR"), the Discounted Conversion Clause, and the Late Fee Provision.

During a meeting held on or about December 19, 2016, the Reveam Board of Directors adopted a resolution to terminate the Taylor Frères engagement effective December 31, 2016 (*id.* ¶31; *see also* NYSCEF 1 ["Compl."] ¶26, NYSCEF 5 [Exh. D]). Nevertheless, Taylor Frères continued its work on behalf of Reveam through at least March 31, 2017, and was paid certain fees and expenses by Reveam through no later than December 31, 2016 (Counterclaims ¶32).

During that December 19, 2016, meeting, Reveam's Board of Directors allegedly acknowledged and confirmed Taylor Frères's "status as a Series A Preferred Shareholder" on that date, as documented by the minutes (*id.*; Compl., NYSCEF 5 [Exh. D] at 2). By the end of 2016, Reveam issued 851,389 Series A-1 Preferred to Taylor Frères, recording the same in the company's books and records (Counterclaims ¶19; NYSCEF 85 [Annual Shareholder's Meeting]

**655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No.  005 006**                                                                 **Page 3 of 18**

3 of 18

[* 3]

at 11). Taylor Frères alleges that Reveam gave no notice of the issuance of those shares to Taylor Frères and never delivered certificates or other documentation of the shares to Taylor Frères (Counterclaims ¶19). By July 2017, Reveam had determined to deny the fact that such shares actually had been issued to Taylor Frères. Through a letter dated July 14, 2017, written by Rice, Reveam's Chief Financial Officer ("CFO"), Reveam claimed that no such shares had been issued to Taylor Frères (*id.* ¶65; Compl., NYSCEF 7 [Exh. F] (the "Rice Letter")).

According to the Counterclaims, in furtherance of their scheme to deceive Taylor Frères and conceal the true facts, Reveam and Rice then embarked on an over-three-year campaign to exclude Taylor Frères from communications sent to other shareholders (Counterclaims ¶73). Such communications included periodic financial statements, capitalization tables, and other information concerning Reveam's financial results, the amount of investments it had received, and the list of shareholders and the classes, numbers, and amounts of their holdings (*id.*). Besides preventing Taylor Frères from learning of the events occurring at Reveam affecting its rights from and benefits to be received in respect of its shareholdings, this omission allegedly also prevented Taylor Frères from understanding the existence or extent of the additional compensation to which it was entitled under the Two-Year Tail Right and the Financial Advisor ROFR (*id.*).

Reveam filed this action in 2021 alleging that Taylor Frères and Taylor have engaged in a scheme of illegality, forgery, and fraud in an attempt to baselessly extract millions of dollars and equity from Reveam to which Taylor Frères is not entitled (*see* Compl. ¶2). By Decision and Order dated February 17, 2023, Taylor Frères's motion to dismiss the Complaint was granted in part (NYSCEF 78). On March 16, 2023, Taylor Frères filed its Answer with Counterclaims, asserting claims for breach of the 2013 and 2014 Agreements against Reveam (first

**655074/2021 SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No. 005 006**

**Page 4 of 18**

4 of 18

counterclaim); unjust enrichment against Reveam (second counterclaim); declaratory judgment against Reveam (third counterclaim); and fraud and deceit against Reveam and Rice (fourth counterclaim).

Reveam now moves to dismiss portions of the first and third counterclaims, and the second and fourth counterclaims in their entirety. Rice moves to dismiss the fourth counterclaim insofar as it is alleged against him.

## DISCUSSION

On a motion to dismiss pursuant to CPLR 3211(a)(7) for failure to state a claim, the court is to "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). "A motion to dismiss pursuant to CPLR 3211(a)(1) should be granted only where the documentary evidence that forms the basis of the defense utterly refutes the plaintiff's factual allegations, and conclusively disposes of the plaintiff's claims as a matter of law" (*Nero v Fiore*, 165 AD3d 823, 826 [2d Dept 2018]). Finally, on a motion to dismiss for lack of personal jurisdiction under CPLR § 3211(a)(8), "the plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction" (*Coast to Coast Energy, Inc. v Gasarch*, 149 AD3d 485, 486 [1st Dept 2017]).

### A. Mot. Seq. 005: Rice's Motion to Dismiss

Rice's motion to dismiss is granted for lack of personal jurisdiction. "[A] New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process" (*Williams v Beemiller, Inc.*, 33 NY3d 523, 528 [2019]).

655074/2021  SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET
AL
Motion No.  005 006

Page 5 of 18

5 of 18

Taylor Frères has failed to establish that either Section 302(a)(1) or (a)(3) of New York's long-arm jurisdiction statute applies to Rice, or that exercising jurisdiction over Rice would comply with due process.[1]

### 1. CPLR 302(a)(1)

"Pursuant to CPLR 302 (a) (1) a New York court may exercise personal jurisdiction over a nondomiciliary if the nondomiciliary has purposefully transacted business within the state and there is "a substantial relationship between the transaction and the claim asserted" (*Coast to Coast Energy, Inc. v Gasarch*, 149 AD3d 485, 486 [1st Dept 2017]). The Counterclaims do not allege any facts to demonstrate that Rice—who a resident of Georgia and works for Reveam in Georgia—transacted business within New York. Nor does the Counterclaim asserted against Rice allege that the purported fraud—the sole count asserted against Rice premised on four alleged falsehoods contained within a July 14, 2017 Letter relating to Taylor Frères' Series A-1 Preferred shares—arose from any transaction of business in New York.

Rather, Taylor Frères points to Rice's Affidavit which states, "I have travelled to New York approximately two times for business in my capacity as Chief Financial Officer for Reveam (in over six years). My trips to New York involved business meetings for Reveam. None of that business related to Taylor Frères or this litigation. None of the trips were made for business in my personal capacity" (*see* NYSCEF 93 ["Rice Aff."] ¶6). Taylor Frères argues that Rice went to New York "presumably to meet with investors in continuation of the campaign to deceive [Taylor Frères] and deceive investors about [Taylor Frères], to the detriment of [Taylor Frères]" (NYSCEF 104 ["Opp."] at 5). However, Taylor Frères has submitted no evidence or

---

[1] The Opposition abandons Taylor Frères' prior assertion that Section 302(a)(2) applies.

**655074/2021  SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No. 005 006**

**Page 6 of 18**

6 of 18

[* 6]

affidavit that either of Rice's meetings involved Taylor Frères, much less that Rice made any statements to Taylor Frères while in New York. Thus, Taylor Frères has failed to demonstrate personal jurisdiction under CPLR 302(a)(1) (*see Coast to Coast Energy,* 149 AD3d at 486).

### 2. *CPLR 302(a)(3)*

Additionally, CPLR 302(a)(3) provides, as relevant here, that a court may exercise personal jurisdiction over a nondomiciliary who in person or through an agent commits a tortious act without the state causing injury to person or property within the state if he or she (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce (CPLR 302 [a][3][i],[ii]; *Williams v Beemiller, Inc.,* 159 AD3d 148, 153 [4th Dept 2018], *affd,* 33 NY3d 523 [2019]).

As noted, Taylor Frères alleges that Mr. Rice committed fraud, a "tortious act" (Counterclaims ¶¶ 64-78, 128-133). The Rice Letter dated July 14, 2017, on which certain of Taylor Frères' fraud claims are based, appears to have originated from Reveam's headquarters in Georgia. Therefore, Taylor Frères argues, this is a "tortious act without the state" which allegedly caused injury to Taylor Frères within the State of New York.

However, "[t]he situs of the injury, for long-arm purposes under CPLR 302 (a) (3), is where the event giving rise to the injury occurred" (*Pramer S.C.A. v Abaplus Intern. Corp.,* 76 AD3d 89, 97-98 [1st Dept 2010]; *Urfirer v SB Builders, LLC,* 95 AD3d 1616, 1618-19 [3d Dept 2012] ["Where, as here, commercial nonphysical losses are alleged, the situs of the injury is not where the losses are sustained, but where the critical events associated with the dispute took place"]). Here, Taylor Frères' only argument is that because it maintained an office in New

**655074/2021 SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL** **Page 7 of 18**
**Motion No. 005 006**

7 of 18

[* 7]

INDEX NO. 655074/2021

RECEIVED NYSCEF: 12/29/2023

York at one time—"until 2018 or 2019"— it therefore was harmed in New York. However, even when assuming that is true,[2] the Rice Letter was—on its face—sent to Taylor Frères at an address in Georgia, and the Counterclaims do not allege any factual connection between the Rice Letter and New York. Nor does the Opposition explain what "critical events" occurred in New York. Taylor Frères has failed to adequately allege any injury in New York to warrant exercising personal jurisdiction over Rice.

But even if Taylor Frères was able to demonstrate an injury in New York, Taylor Frères has failed to demonstrate the applicability of subsections (i) or (ii) of CPLR 302(a)(3). Taylor Frères argues that under CPLR 302(a)(3)(i), there is reason to believe that Reveam (and therefore Mr. Rice, because he is an officer and shareholder of Reveam) regularly do or solicit business in New York, engage in another persistent course of conduct in New York, or derive substantial revenue from goods used or consumed in New York (Opp. at 3). However, the press release cited by Taylor Frères in support of this argument indicates that Reveam does business in various states, but New York is not listed as one of them (*see* NYSCEF 104, Exhibit A).

Furthermore, the fact that Reveam filed this action in New York is not sufficient to find Rice subject to personal jurisdiction.[3] To the extent Taylor Frères is asserting an agency jurisdiction theory, Taylor Frères has failed to provide an analysis of the factors required (*see Beatie and Osborn LLP v Patriot Sci. Corp.*, 431 F Supp 2d 367, 389 [SDNY 2006] [laying out

---

[2] The existence of Taylor Frères' office in New York is disputed by the parties. Based on the information submitted by both parties, it appears that Taylor Frères may have had (or currently maintains) a virtual office address at Rockefeller Plaza (see NYSCEF 4, 5, 6, 107, 108, 109).

[3] The connection Reveam has to New York is that the underlying agreements in this action have New York choice of law provisions. However, these agreements predate any alleged fraud by Rice and Rice's employment at Reveam.

655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL
Motion No. 005 006

Page 8 of 18

four-pronged test]; *Arma v Buyseasons, Inc.*, 591 F Supp 2d 637, 647 [SDNY 2008] ["Although "[p]laintiff need not establish a formal agency relationship" between the individual defendant and the corporation to successfully assert an agency theory, a plaintiff must allege facts sufficient to establish all four elements of the agency test."] [citation omitted] [applying New York law]).

Finally, Taylor Frères' argument that CPLR 302(a)(3)(ii) is satisfied because Rice received and directed numerous pieces of correspondence to Taylor Frères (including the 2013 Agreement and the 2014 Agreement) at its Rockefeller Plaza office in New York is unavailing. Exercising personal jurisdiction in such circumstances "would not satisfy the well-established principles of due process, which require that defendants could 'reasonably foresee' facing suit in the forum" (*State v First Abu Dhabi Bank PJSC*, 2022 NY Slip Op 22113 [Sup Ct, NY County 2022], citing *Copp v Ramirez*, 62 AD3d 23, 30-31 [1st Dept 2009]). Rice's limited contacts with New York are too attenuated to satisfy due process requirements (*Williams v Beemiller, Inc.*, 33 NY3d 523, 529 [2019] ["[T]he relationship between defendant and the forum state must arise out of defendant's own contacts with the forum and not 'contacts between the plaintiff (or third parties) and the forum State'"] [*quoting Walden v Fiore*, 571 US 277, 283–284 [2014]]).

The Court declines Taylor Frères' request for jurisdictional discovery pursuant to CPLR 3211, as Taylor Frères has failed to "demonstrate the possible existence of facts that would support the exercise of personal jurisdiction" over Rice (*Matter of New York City Asbestos Litig.*, 210 AD3d 416, 417 [1st Dept 2022]). Accordingly, Rice's motion to dismiss for lack of personal jurisdiction is granted. Given this finding, the Court need not address Rice's argument for dismissal under CPLR §§ 3211(a)(1) or (7).

**655074/2021  SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No. 005 006**

**Page 9 of 18**

9 of 18

[* 9]

## B. Mot. Seq. 006: Reveam's Motion to Dismiss

Taylor Frères asserts counterclaims against Reveam for breach of the 2013 and 2014 Agreements, unjust enrichment, declaratory judgment, and fraud and deceit. For the following reasons, Reveam's motion to dismiss is granted in part.

### 1. Breach of the 2013 and 2014 Agreements (first counterclaim)

In its first counterclaim, Taylor Frères alleges that Reveam breached various provisions of the 2013 Agreement, as amended, however Reveam only seeks dismissal as to four provisions: the Two-Year Tail Right, Financial Advisor Right of First Refusal ("Financial Advisor ROFR"), the Discounted Conversion Clause, and the Late Fee Provision. The Two-Year Tail Right, and the Late Fee provision as it relates to the Two-Year Tail Right survives. However, the branch of the breach of contract claim that alleges breach of the Financial Advisor ROFR and related Late Fee provision, and the Discounted Conversion Clause are dismissed.

First, Reveam argues that the 2014 Side Letter superseded the 2013 Agreement's Two-Year Tail Right. The 2014 Side Letter expressly states that "the Parties have mutually agreed modifications to the Indicative Capital strategy set forth on page three (3) of the Letter Agreement, which modifications necessitate the clarification, for the avoidance of doubt, of the Client's obligations to the Firm as set forth in the Fees and Disbursements section of the Letter Agreement on page four (4) thereof" (2014 Side Agreement at 1) and that the 2014 Side Letter is "incorporated into and made a part of the [2013] Letter Agreement for purposes of interpretation and modification of the … Fees and Disbursements … provisions thereof. Except as otherwise expressly provided for herein, this Side Letter Agreement shall be subject to the terms and conditions promulgated under the Letter Agreement" (*id.* at 3 (emphasis added)).

**655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No.  005 006**

**Page 10 of 18**

The 2014 Side Letter does not mention the Two-Year Tail Right, and it is not clear from the language of the 2014 Side Letter itself that the Two-Year Tail Right provision was superseded. Therefore, the Court cannot conclude on a motion to dismiss, based solely on the language of the 2014 Side Letter, that the Two-Year Tail Right was extinguished.

Second, Reveam argues that both the Two-Year Tail Right and Financial Advisor ROFR provisions are unenforceable "agreements to agree." The Two-Year Tail Right provision states:

> To the extent that aggregate Consideration from Financing Transactions covered hereunder exceeds $35,000,000 with the term of this Letter Agreement or within twenty-four (24) months following the termination thereof other than for Cause, [Reveam] and [Taylor Frères] shall negotiate in good faith appropriate supplemental compensation for [Taylor Frères] in the form of supplemental Performance Bonuses, which will take into account, inter alia, the results obtained and the value derived by [Reveam] in connection with said Financing Transactions, together with prevailing customs and practices among financial advisors acting in similar transactions.

(2013 Agreement at 5). Thus, the Two-Year Tail Right provides that, upon the achievement of $35 million in financing, there shall be "supplemental compensation for [Taylor Frères] in the form of supplemental Performance Bonuses." The amount of such bonuses "shall" be negotiated in good faith. In other words, the Two-Year Tail Right constituted a present agreement to pay supplemental compensation upon the achievement of the financing. It does not state that the parties shall negotiate *whether* to pay supplemental compensation to Taylor Frères; the parties will only negotiate its amount. Furthermore, the provision states that the performance bonus "will take into account, *inter alia*, the results obtained and the value derived by the Client in connection with said Financing Transactions, together with prevailing customs and practices among financial advisors acting in similar transactions" (2013 Agreement at 5). This is sufficiently definite (*Cowen and Co., LLC v Fiserv, Inc.*, 141 AD3d 18, 21 [1st Dept 2016]

["The 'Transaction Fee' provision explicitly references the type of "commercial practice, or trade usage" New York courts routinely rely upon to render a price term sufficiently definite"]; *see also Cobble Hill Nursing Home, Inc. v Henry and Warren Corp.*, 74 NY2d 475, 483 [1989]).

Thus, the Late Fee provision as it relates to the Two-Year Tail Right survives. The 2013 Agreement, as amended, contained a provision imposing a monetary penalty for amounts payable to Taylor Frères which were paid late (2013 Agreement at 6). Taylor Frères admits that the Two-Year Tail Right does not state when compensation would be due under those provisions, and thus when late fees and interest would be triggered. However, it is not the case, as Reveam asserts, that time is an essential element of every contract. To the contrary, where a contract does not specify a time for performance, courts will infer a reasonable one; and the question of a reasonable time is an issue of fact (*Lotwala v Dhabuwala*, 2022 NY Slip Op 32639(U) [Sup Ct, NY County 2022]).

Turning to the Financial Advisor ROFR, even assuming the provision itself is sufficiently definite to constitute a binding agreement, Taylor Frères does not allege that Reveam ever engaged any third-party to serve as its Financial Advisor and perform any services in lieu of Taylor Frères. In other words, there was no engagement for Taylor Frères to refuse. Thus, Taylor Frères has failed to allege any breach of the Financial Advisor ROFR.

The text of the Financial Advisor ROFR Clause is set forth as follows:

> If at any time within thirty-six (36) months following the successful closing of any Financing Transaction [Reveam] desires to commence any other Financing Transaction or Business Combination Transaction, [Taylor Frères] shall be granted an unconditional right of first refusal (the "Right of First Refusal") to act as [Reveam]'s exclusive Financial Advisor and, in such capacity to earn Advisory Fees, Performance Fees, and other compensation consistent with established customs and practices for financial advisors acting in transactions substantially similar to said transaction(s). If [Reveam] elects to pursue any such Transaction within

655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL
Motion No.  005 006

Page 12 of 18

12 of 18

said timeframe, and [Taylor Frères] exercises its Right of First Refusal, [Reveam] and [Taylor Frères] shall in good faith negotiate and enter into one or more definitive agreements appropriate to the circumstances of such transaction(s).

(2013 Agreement at 8-9). As this Court recently held in *Daiwa Corporate Advisory LLC v Katapult Group, Inc.* (2023 NY Slip Op 33079[U] [Sup Ct, New York County]), the language of **shall** and **exclusive** in the ROFR distinguishes *Foros Advisors LLC v Digitalglobe, Inc.* (333 F Supp 3d 354 [SDNY 2018] [applying New York law]), wherein the ROFR only offered the plaintiff the *opportunity* to act as a financial advisor. Here, like *Daiwa*, the language of the ROFR provides that Taylor Frères "shall" be granted an "unconditional right" of first refusal to act as Reveam's "exclusive Financial Advisor."

However, Taylor Frères does not allege that Reveam engaged any third-party to serve as its Financial Advisor and perform any services in lieu of Taylor Frères. This distinguishes the instant case from *Daiwa*, in which the defendant retained a financial advisor for a sale within the scope of the right of first refusal without extending the offer to the plaintiff (2023 NY Slip Op 33079[U] *3). A right of first refusal, generally speaking, "does not give its holder the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the party holding the preemptive right so that he may meet a third-party offer or buy the property at some other price set by a previously stipulated method" (*Metro. Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156, 163 [1986]). Likewise, in this context, the right of first refusal did not give Taylor Frères the power to *require* Reveam to hire a financial advisor; rather, only if Reveam decided they needed a financial advisor for a financing transaction within a particular time frame was Reveam required to offer the opportunity to Taylor Frères for "refusal." Since there are no allegations of any event that triggered the

655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL

Page 13 of 18

Motion No.  005 006

Financial Advisor ROFR, this claim is dismissed. Accordingly, the Late Fee provision as it related to the Financial Advisor ROFR is also dismissed.

The next provision of the 2013 Letter Agreement underlying Taylor Frères's breach of contract claim is the "Discount[ed] Conversion Right," on which the Counterclaims rely to "convert the total amount [allegedly] due and payable under" the Two-Year Tail Rights, Financial Advisor FOFR, and late fee provisions into shares of Reveam stock.

Under the Discounted Conversion Right, Taylor Frères was required to exercise its "sole discretion" and make an "election" on a specific "date"—as a prerequisite to Reveam having any obligation to "convert[]" any "liabilities …accrued … into the most senior class of [Reveam's] equity" outstanding "as at the date of such election." (2013 Agreement). Although Taylor Frères's Counterclaim asserts a "breach of contract" count premised on breach of the "Discount[ed] Conversion Clause" (Counterclaims ¶ 107), the Counterclaims allege Taylor Frères has not yet exercised that option: "Taylor Frères … **may elect to convert** the total amount due … into the most senior class of equity security of Reveam." (*id.* ¶ 55 [emphasis added]; *see also id.* ¶¶ 43, 127 (seeking declaratory judgment that, *prospectively,* Taylor Frères "may elect … to convert")). Unless and until Taylor Frères *exercises* the option, however, there is no ripe claim for breach of contract, as opposed to a claim for declaratory judgment. Accordingly, Reveam's motion to dismiss the branch of the breach of contract claim relating to the Discounted Conversion Right is granted.

## 2. **Unjust enrichment (second counterclaim)**

Taylor Frères's unjust enrichment claim must be dismissed for the same reason this court dismissed Reveam's unjust enrichment claim: because contracts governed the parties' relationship (*see* NYSCEF 82 [Feb. 17, 2023 Tr.] 53:4-54). If Taylor Frères' contract and tort

**655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**

**Motion No.  005 006**

**Page 14 of 18**

14 of 18

[* 14]

claims succeed, the unjust enrichment claim is duplicative; if Taylor Frères' contract and tort claims are defective, "an unjust enrichment claim cannot remedy the defects" (*Corsello v Verizon New York, Inc.*, 18 NY3d 777, 790 [2012]).

### 3. Declaratory Judgment (third counterclaim)

Taylor Frères' third counterclaim seeks various declaratory relief relating to the validity and enforceability of the 2013, 2014, and 2015 Agreements, and ordering that Taylor Frères is entitled to the rights and benefits of such agreements, including the Two-Year Tail Right, Financial Advisor ROFR, Late Fees and Interest, and Discounted Conversion provisions (*see* Counterclaims ¶¶115–127).

Reveam's motion to dismiss the declaratory judgment claim is granted in part. Reveam argues that if the Court dismisses the contract claims, dismissal of the declaratory judgment allegations as to the affected issues should "follow as a matter of course" (NYSCEF 96 [Memo in Support] at 21). The Court agrees as to the Financial Advisor ROFR and related late fee provision. However, the Court has not dismissed the claims relating to the Two-Year Tail Right and related late fees. Furthermore, the forward-looking claim regarding the Discounted Conversion Clause is correctly brought under a declaratory judgment claim, instead of breach of contract. Given this, Reveam has failed to demonstrate that dismissal of the *entire* declaratory judgment claim is warranted. Rather, only the portions of the declaratory judgment claim that related to the Financial Advisor ROFR and related late fees are dismissed.

### 4. Fraud and Deceit (fourth counterclaim)

Reveam's motion to dismiss the fraud and deceit claim is denied. Taylor Frères's fraud claim concerns whether and when Reveam issued shares to Taylor Frères and the alleged failures by Reveam to provide information to Taylor Frères concerning such stock issuance

655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL
Motion No.  005 006

Page 15 of 18

15 of 18

(Counterclaims ¶¶ 64-78). Reveam argues that Count IV should be dismissed against it[4] primarily on the ground that Taylor Frères' fraud claims are duplicative of its breach of contract claims.

Under Georgia law, [5] while a tort action cannot be based on the breach of a contractual duty only, it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a separate duty imposed by law (*Northwest Plaza, LLC (MI) v Northeast Enterprises, Inc.*, 305 Ga App 182 [Ga Ct App 2010]). Under section 51-6-2 of the Georgia Code, "[w]illful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action" (OCGA § 51–6–2[a]). Thus, in *Northwest Plaza*, the Georgia court applied OCGA § 51–6–2[a], and found that the existence of a contract between the parties did not bar the fraud claim arising out of contractual duties, where the allegations of fraud related to the misrepresentation and willful concealment of information after the agreement was signed (*see Northwest Plaza, LLC (MI)*, 305 Ga App at 192; *see also Wimpy v Martin*, 356 Ga App 55, 56 [Ga Ct App 2020] [same]; *Abalene Pest Control Serv., Inc. v Orkin Exterminating Co., Inc.*, 196 Ga App 463, 471, 395 SE2d 867,

---

[4] This claim was also brought against Rice.

[5] The parties cite, without explanation, Georgia and New York law. Under New York's choice of law principles, a flexible "interest analysis" rule applies to tort claims, under which "the law of the jurisdiction having the greatest interest in resolving the particular issue" is given controlling effect (*Shaw v Carolina Coach*, 82 AD3d 98, 101 [2d Dept 2011]). Here, most of the allegations relating to the fraud claim are related to the Rice Letter, which was sent from an address in Georgia, to another address in Georgia. As noted in the analysis in Mot. Seq. 005, this case has little, if any, connection to New York. Accordingly, the Court finds Georgia has a greater interest in resolving the particular issue and regulating conduct within its borders (*id.* ["[If the conflicting laws regulate conduct, the law of the place of the tort "almost invariably obtains" because "that jurisdiction has the greatest interest in regulating behavior within its borders"]).

655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL
Motion No.  005 006

Page 16 of 18

16 of 18

874 [Ga Ct App 1990] ["[A] single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him"]).

Here, while the 2013 Agreement is what purportedly entitles Taylor Frères to Reveam stock and certain information concerning Reveam and its stock, Taylor Frères' fraud allegations relate to, among other things, Reveam's alleged misrepresentations about whether such stock was issued, and the purposeful omission and willful concealment of information to which Taylor Frères was entitled as a shareholder.

Specifically, Taylor Frères alleges that the Rice Letter contained certain falsehoods, including denying that Series A-1 Preferred shares had been issued to Taylor Frères. Taylor Frères alleges that Reveam had in fact issued Series A-1 Preferred shares to Taylor Frères in 2016, and Reveam recognized this in capitalization tables sent to other shareholders in June 2017. Despite purportedly recognizing the issuance of those shares, Reveam subsequently excluded Taylor Frères from any other information sent to shareholders over a four-calendar year period (2017-2020), undermining its rights as a shareholder. These allegations go beyond the breach of contract claims and allege a breach of OCGA § 51–6–2[a] through willful misrepresentation and concealment. Therefore, the fraud claim is not duplicative of the contract claims under Georgia law.

Finally, factual issues exist as to whether Reveam intentionally misrepresented or concealed material matters with the intent to mislead Taylor Frères (*Bill Spreen Toyota, Inc. v Jenquin*, 163 Ga App 855, 859, 294 SE2d 533, 537 [Ga Ct App 1982] [holding that intent "is a jury question except in plain and palpable cases. Likewise, whether the misrepresentation is fraudulent is a jury question."]). Likewise, whether Taylor Frères justifiably relied on any such

**655074/2021    SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No. 005 006**

**Page 17 of 18**

misrepresentations is a question of fact not suited for a motion to dismiss (*Catrett v Landmark Dodge, Inc.*, 253 Ga App 639, 641 [Ga Ct App 2002] ["Justifiable reliance generally is a question for the jury"]).

Accordingly, it is

**ORDERED** that the motion by Counterclaim-Defendant Martin H. Rice to dismiss is **GRANTED**, and the Counterclaim as alleged against him are dismissed; it is further

**ORDERED** that the motion by Counterclaim-Defendant Reveam to dismiss is **GRANTED** insofar as the branch of the breach of contract claim relating to the Discounted Conversion Clause, Financial Advisor ROFR, and related late fee provision (first counterclaim) are dismissed; the branch of the declaratory judgment claim relating to Financial Advisor ROFR, and related late fee provision (third counterclaim) are dismissed; and the unjust enrichment claim (second counterclaim) is dismissed, and the motion is otherwise denied.

This constitutes the Decision and Order of the Court.

20231229132828 JMCOHEN7A5A367A1008466D94DE6F91762BCDF2

| 12/29/2023 | | JOEL M. COHEN, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**655074/2021   SCANTECH SCIENCES, INC. vs. TAYLOR FRERES CAPITAL MARKETS, LLC ET AL**
**Motion No.  005 006**

Page 18 of 18

18 of 18

[* 18]